J-A01045-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ERIC LINDE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SCOTT LINDE, | : | |
| | : | |
| Appellant | : | No. 1078 EDA 2018 |

Appeal from the Order Entered March 6, 2018
In the Court of Common Pleas of Wayne County Civil Division at No(s):
167-CIVIL-2016

BEFORE:  OTT, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:  **FILED MAY 21, 2019**

Scott F. Linde appeals from the order granting his emergency motion for stay of execution pending appeal but requiring that he execute certain documents to be held in escrow. We affirm.

The facts of the underlying case are set forth in the opinion docketed at the companion case, *Linde v. Linde*, No. 451 EDA 2018. In that case, we upheld the trial court's finding that Scott breached the parties' Settlement Agreement and that Eric did not breach it. The court ordered specific performance of the Settlement Agreement, and Scott appealed. The Settlement Agreement provided that, in exchange for Eric's stock in two companies, Scott would pay an initial payment of $1,000,000 and five installment payments of $200,000. It further required that Scott transfer to Eric his partnership interests in Cloverleaf Partners, Golf Hill Partners, CWERSF

Partnership, and his interest as a tenant in common in land in Texas Township. Eric and his son were to resign as officers of LEI.

On February 6, 2018, Scott filed an "Emergency Motion for Stay of Execution Pending Appeal Pursuant to Pa.R.A.P. 1731, Et Seq., and Approval of Form of Security for Appeal." Eric responded, noting that the judgment included monetary and non-monetary relief and arguing that the dollar figure of the bond was inadequate because it did not include the final $200,000 payments that would be due under the Settlement Agreement. On February 12, 2018, Scott filed an "Amended Emergency Motion for Stay of Execution Pending Appeal Pursuant to Pa.R.A.P. 1733, et seq., and approval of form of security for appeal as well as approval of Certain Terms and Conditions to Preserve Status Quo." Scott had obtained a bond for 100% of the monetary amount ($2,246,733), and Eric agreed this amount was sufficient. Scott further averred that Eric had presented him with a set of proposed documents to be executed and delivered to the Prothonotary of Wayne County to be held in escrow pending the outcome of the appeal. Scott also drafted a set of documents. The parties agreed on the following documents: Praecipes to Discontinue the 13 pending actions the parties had commenced against each other prior to the Settlement Agreement; Resignations for both Eric and Gary Linde as officers and directors of LEI; Deed from Scott to Eric for property in Texas Township, Wayne County; the LEI Resolution; and the Stock Purchase Agreement.

In the Amended Motion, Scott alleged the parties had two disagreements as to the remaining documents. First, for the Transfers of Partnership Interest in CWERSF, Golf Hill Farms and Cloverleaf, the parties were unable to agree to whether the following lines should be included: "subject to the terms of the Cloverleaf Partnership Agreement dated January 25, 1982," "subject to the terms of the Golf Hill Farms Partnership Agreement dated December 11, 1989," and "subject to the terms of CWERSF Partnership Agreement dated __ day of _____, 1978 and Amendment dates December 11, 1989." Amended Emergency Motion, filed Feb. 12, 2018, at ¶ 21. Scott wanted these lines included, but Eric did not.

Second, the parties were unable to agree as to the language for the Mutual and General Release. Eric objected to the inclusion of the following: "but excepting, excluding and reserving from this Mutual and General release the right and ability of the Defendants, Scott F. Linde and Scott F. Linde as Trustee of the Scott F. Linde Family S Corporation Trust to institute any actions in law or equity which could be asserted by them as a Shareholder of Linde Enterprises, Inc. against [Eric]." *Id.*

The trial court held a hearing. On March 6, 2018, it entered an order granting the Amended Emergency Motion. It approved the supersedeas bond submitted by Scott. It further approved the documents that Eric submitted for the Transfer of Partnership Interest in CWERSF, Transfer of Partnership Interest in Cloverleaf Partners, and Transfer of Interest in Golf Hill Farms Partnership, which did not subject the transfers to the terms of the Partnership

- 3 -

Agreements. The court ordered the documents to be held in escrow with the Prothonotary of Wayne County.[1] It further ordered that the Mutual and General Release be held in escrow, but that it include the following modification:

> 2. <u>General Release</u>: For and in consideration of mutual promises contained herein, Defendant hereby irrevocably release and forever unconditionally discharge Plaintiffs and any and all of Plaintiffs predecessors, related or affiliated entities, as well as their respective officers, directors, shareholders, attorneys, insurers, trustees, partners, present and former employees, agents, successors, assigns, heirs, executors and administrators, both individually and in their official capacities . . . , of and from any and all actions, causes of action, suits, claims, counterclaims, cross claims, debts, dues, accounts, bonds, covenants, charges, complaints, contracts, agreements, promises, judgment and demands whatsoever, in law or in equity, against Plaintiffs and the Plaintiff Related Parties which the Defendants and the Defendant Related Parties **had on or before June 9, 2014.**

Order, filed Mar. 6, 2018 (emphasis in original).

It also ordered all documents agreed to by the parties to be held in escrow.

Scott filed a Notice of Appeal, and raises the following issues:

> 1. Did the lower Court commit an abuse of discretion and an error of law in its March 6, 2018 Order by imposing the Performance Conditions upon Scott when the Supersedeas Bond in the amount of $2,046,733.00 was approved because the extraordinary Performance Conditions imposed upon Scott by the Court required Scott to execute all documents required for a Closing, even though the

---

[1] Scott did not challenge before the trial court the authority of the Prothonotary to hold executed documents in escrow pending appeal.

- 4 -

conditions precedent to a Closing, if any, had not been satisfied by Eric, and because the conditions precedent had not been satisfied by Eric, the Performance Conditions wrongfully imposed by the Court are premature and exceed the authority of the Court based upon the Appellate Rules of Procedure?

2. Did the lower Court commit an abuse of discretion and an error of law in its March 6, 2018 Order by imposing and ordering the Performance Conditions when granting the Supersedeas Bond for the appeal of the trial Courts March 6, 2018 Order, which Performance Conditions exceed the rules of Appellate Procedure and which should not be compelled prior to Eric's satisfaction of the conditions precedent set forth in the Settlement Agreement being satisfied because said Performance Conditions include conditions of specific performance which are premature and improper based upon the failure of performance by Eric?

3. Did the lower Court commit an abuse of discretion and an error of law in its March 6, 2018 Order by imposing and ordering the overbroad Performance Conditions on the Supersedeas Bond which are the subject of the trial Court's March 6, 2018 Order?

4. Did the lower Court commit an abuse of discretion and an error of law in its March 6, 2018 Order by imposing and ordering the Performance Conditions on the Supersedeas Bond which are the subject of the trial Court's March 6, 2018 Order for which the mechanism for determining such compliance is impossible to determine?

Scott's Br. at 12-14.

Although Scott lists four issues, he has only one section in his brief's argument section. We will address only those issues that we can discern from the argument section of the brief.

Scott maintains he obtained the monetary bond required for the automatic supersedeas and therefore is entitled to the stay of execution during appeal based on this bond. He argues that Eric will not be harmed because

the monetary security is with the Prothonotary, and therefore the trial court should not have required him to execute the additional documents.

Rule 1731 provides for an automatic supersedeas for the orders for payment of money:

> (a) General rule. Except as provided by subdivision (b), an appeal from an order involving solely the payment of money shall, unless otherwise ordered pursuant to this chapter, operate as a supersedeas upon the filing with the clerk of the lower court of appropriate security in the amount of 120% of the amount found due by the lower court and remaining unpaid. Where the amount is payable over a period of time, the amount found due for the purposes of this rule shall be the aggregate amount payable within 18 months after entry of the order.

Pa.R.A.P. 1731(a). Rule 1733 governs requirements for supersedeas on agreement or application, providing:

> (a) General rule. An appeal from an order which is not subject to Rule 1731 (automatic supersedeas of orders for the payment of money) shall, unless otherwise prescribed in or ordered pursuant to this chapter, operate as a supersedeas only upon the filing with the clerk of the court below of appropriate security as prescribed in this rule. ***Either court may, upon its own motion or application of any party in interest, impose such terms and conditions as it deems just and will maintain the res or status quo pending final judgment or will facilitate the performance of the order if sustained.***

Pa.R.A.P. 1733(a) (emphasis added).

Although the Rules provide for an automatic supersedeas when a bond is secured for monetary judgments, the Rules also provide that a court may "impose such terms and conditions as it deems just and will maintain the res or status quo pending final judgment or will facilitate the performance of the

order if sustained." Pa.R.A.P. 1733(a). Here, the court stated that "[t]o facilitate the performance of the July 19, 2017 Verdict, and resolve this eighteen (18) year dispute, this Court imposed conditions that would facilitate the performance of the entire Verdict." Trial Court Opinion, filed May 31, 2018, at 2 ("1925(a) Op."). As the order appealed from required monetary payment and specific performance, this was not error.

Scott next notes that he and Eric agreed on the terms of various documents that would be executed and held pending appeal. He claims that Eric objected to the inclusion of language in the document transferring Scott's partnership interest, which would subject the transfer to the terms of the partnership agreement. Scott claims that this limiting language is needed "in the event that an impediment occurs to the transfer of a partnership interest from Scott to Eric." Scott's Br. at 33.

Scott also argues that Eric objected to inclusion of a line in the general release that would except from the release "the right and ability of [Scott and the Scott Trust] to institute any actions in law or equity which could be asserted by them as a Shareholder of Linde Enterprises against the Plaintiffs and the action of CWERSG, Golf Hill Farms, Scott F. Linde, Individually and as a partner of CWERFS and Golf Hill Farms and Barbara J. Linde, Individually and as a partner of CWERSF and Golf Hill Farms v. Eric R. Linde, Individual and as a partner of CWERSF and Golf Hill Farms to No. 363-CV-2017 in the Court of Common Pleas of Wayne County." Scott's Br. at 33-34. He claims he and the Scott Trust "must have the right to initiate any action in law or equity

which could be asserted by them as a Shareholder of LEI against Eric due to the fact that Eric, as majority and controlling shareholder of LEI had absolute control of LEI since January 1, 2013 and would continue to have absolute control until the Settlement Date." *Id.*

"The decision to grant or deny a stay pending appeal is vested in the trial court's discretion and will not be reversed absent a clear abuse of that discretion." *In re Estate of Hartman*, 582 A.2d 648, 653 (Pa.Super. 1990).

Here, the trial court found:

> The July 19, 2017 Verdict found [Scott] in breach of the June 9, 2014 Settlement Agreement and Ordered [Scott] to comply with the terms and conditions of the Settlement Agreement. Within the Settlement Agreement, [Scott] agreed to transfer to [Eric] his partnership interests in Cloverleaf, Golf Hill Farms, and CWERSF. Thus, to facilitate the performance of the Verdict if sustained, this Court imposed conditions that required the documents transferring [Scott's] partnership interests in Cloverleaf, Golf Hill Farms, and CWERSF to be held in escrow with the Prothonotary of Wayne County. This Court finds these conditions to be just due to [Scott's] prior attempt to frustrate the terms of the Settlement Agreement. *See* Statement of Reasons filed April 2, 2018.
>
> [Scott] argued on February 21, 2018 that the documents transferring his partnership interests in Cloverleaf, Golf Hill Farms, and CWERSF should include the terms "subject to the terms of the Cloverleaf Partnership Agreement dated January 25, 2982"; "subject to the terms of Golf Hill Farms Partnership Agreement dated December 11, 1989"; and "subject to the terms of CWERSF Partnership Agreement dated the _____ day of _____, 1978 and Amendment dated December 11, 1989." This Court's July 19, 2017 Verdict and Order enforces the terms and conditions of the June 9, 2014 Settlement Agreement. The terms requested by Appellant were not included in this Court's March 6, 2018 Order

because they were not terms that were agreed to in the June 9, 2014 Settlement Agreement.

1925(a) Op. at 2-3. It further noted:

[T]his Court did not include these requested terms in its March 6, 2018 Order. It is unclear to this Court how the conditions imposed by this Court are suddenly outside the control of [Scott] when they are the same terms agreed to by [Scott] in the June 9, 2014 Settlement Agreement. This Court's March 6, 2018 Order merely facilitates the performance of the July 19, 2017 Verdict by requiring the executed documents to be held in escrow with the Prothonotary of Wayne County.

*Id.* at 4. When discussing the General and Mutual Release, the court noted:

[Scott] was concerned about language that would exclude him from bringing a future action against [Eric] for actions that occurred after the Settlement Date. The language approved by this Court for the General Release would not exclude [Scott] from doing that.

*Id.* at 4-5.

The trial court did not abuse its discretion. Through the order, it ensured the completion of the terms of the Settlement Agreement if its verdict was upheld on appeal.

Scott next claims the trial court exceeded its scope of authority by "ordering Scott to sign and deliver the Closing Documents which would in effect conclude transactions between Eric and Scott even though Pa.R.A.P. 1733 does not permit the trial court such latitude." Scott's Br. at 34. He claims the imposition of the obligations did not maintain "res or status quo pending final judgment." *Id.* at 35.

- 9 -

Although on appeal, Scott appears to claim the trial court could not order that documents be executed and held in escrow pending appeal, he did not raise this claim before the trial court. Rather, before the trial court he agreed to the execution of certain documents, which would be held in escrow, but disputed the contract terms of certain documents. As the trial court noted:

> When this Court heard Argument on [Scott's] Amended Emergency Motion for Stay of Execution Pending Appeal, there were only two (2) issues the parties could not come to an agreement on. The first issue was the language of the documents to be held in escrow with the Prothonotary of Wayne County that transferred [Scott's] partnership interests in Cloverleaf, Golf Hill Farms, and CWERSF to [Eric]. The second issue was the language of the General Release to be held in escrow with the Prothonotary of Wayne County. . . . [T]his Court's decision to exclude [Scott's] requested terms did not make the March 6, 2018 Order overbroad but rather facilitated this Court's July 19, 2017 Verdict which enforces the terms of the June 9, 2014 Settlement Agreement. In regard to the General Release, [Scott] was concerned about language that would exclude him from bringing a future action against [Eric] for actions that occurred after the Settlement Date. The language approved by this Court for the General Release would not exclude [Scott] from doing that . . . .

1925(a) Op. at 4-5. We conclude the trial court did not abuse its discretion or err in addressing the dispute concerning the document language.

Order affirmed.

- 10 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>5/21/19</u>